1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DORIA M. KING, | ) | 1:09cv01940 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Doria M. King ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed her application on January 10, 2007, alleging disability since September 1, 2004, due to Hepatitis C, carpal tunnel syndrome, depression, a bad back, an injury to her left shoulder, chronic asthma, anxiety and panic attacks. AR 122-125, 129-136. After her

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

application was denied initially and on reconsideration, Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ").  AR 62, 74, 93.  ALJ Patricia Leary Flierl held a hearing on

January 22, 2009, and issued an order denying benefits on July 30, 2009.  AR 10- 20, 21-61.  On

September 16, 2009, the Appeals Council denied review.  AR 1-3.

Hearing Testimony

ALJ Flierl held a hearing on January 22, 2009, in Fresno, California.  Plaintiff appeared

with her attorney.  Melissa Proudian.  Vocational expert ("VE") Thomas Dachelet also appeared

and testified.  AR 21.

At the beginning of the hearing, Plaintiff explained that she had been trying to go back for

mental health treatment for the past three weeks.  She testified that she stopped mental health

treatment in August 2007 because she had physical problems that she was dealing with.  Even

though she wasn't seeing a mental health professional, she continued to see her primary doctor

monthly and received her medications.  AR 24-26.

Plaintiff testified that she was 41 years old at the time of the hearing.  She is 5 feet, 9

inches tall and weighs 228.  Her weight has increased over the past 6 months because her body

rejected the Hepatitis C treatment and she has gained a lot of weight since then.  AR 26-27.

Plaintiff is not married and has three children, ages 21, 19 and 17.  AR 26.  Plaintiff lives with

her mother and her two youngest children.  AR 27.  Plaintiff has never had a driver's license but

she drives to the store.  AR 28.  She has a GED and has never had any vocational training.  AR

28-29.

Plaintiff last worked about 6 or 7 years ago at Subway as a cashier and food preparer.

She has had other jobs short term, but has never had a job for over a year because she used to use

drugs.  AR 29-30.  Plaintiff last used drugs and alcohol on January 27, 2007.  AR 34.

She does not believe she could perform work now because her energy level is "really

bad" and she is fatigued and tired all the time.  Plaintiff takes a lot of medication, which also

makes her drowsy.  Her knees are always weak and she sometimes feels like she is going to fall

down.  Plaintiff also has Hepatitis C, asthma and depression.  AR 33-34.  She started Interferon

treatment in October 2007, but had to discontinue treatment because her body rejected it.  AR 35-

1  36. Plaintiff was told there was no other treatment and that she just had to live with the disease.
2  AR 36.

3      Plaintiff explained that she is always tired and is always in bed.  She only gets out of bed
4  to go to the bathroom or eat.  When she gets out of bed, it's for 30 minutes to an hour.  She
5  usually stays in a t-shirt and pajamas during the day and stays to herself because she doesn't like
6  anybody to be around.  AR 37.  She sometimes only showers twice a week because she is too
7  weak to shower more often.  AR 38.  Once or twice a week, she'll help in the kitchen with
8  cooking, but her mother and daughter do most of the cooking.  AR 38.  Once a week, she does
9  laundry.  AR 38.  Plaintiff drives to the store two or three times per week to get water.  She does
10 not go to church or see any friends on a regular basis.  AR 39.

11     As for her asthma, Plaintiff testified that she gets short of breath, where she feels like
12 she's going to have an asthma attack, once or twice a week.  Plaintiff gets short of breath when
13 she feels like "someone is coming around" her and she yells and screams.  AR 39-40.  She uses
14 her inhaler and it takes her 30 minutes to an hour for her breathing to get back to normal.
15 Plaintiff sometimes uses her granddaughter's nebulizer.  AR 41.  A few months ago, Plaintiff's
16 daughter made her upset and she couldn't breath.  She was taken by ambulance to the emergency
17 room and was kept at the hospital for 7 or 8 days.  AR 41-42.  Cigarette smoke also makes it hard
18 for Plaintiff to breathe, but she smokes about 10 cigarettes a day.  AR 42.  Extreme heat, bleach,
19 air fresheners and perfumes also make her short of breath.  AR 43.

20     Plaintiff further testified that she is depressed all the time because she "stays focused" on
21 things that make her depressed.  Something happened in her childhood and she has been raped
22 twice.  She doesn't really like men because "most of them hurt people."  Plaintiff has thoughts
23 racing through her mind all the time and she has suicidal thoughts every other day.  AR 43.
24 About 3 or 4 years ago, she tried to slit her wrists, but a friend caught her before she broke the
25 skin.  AR 44.  Plaintiff currently takes Celexa for depression and Xanax for anxiety attacks.  AR
26 44.  The medication doesn't help all the time and she often tries to go to sleep to get thoughts out
27 of her head.  Plaintiff thought that she could focus for about 30 minutes before she goes into "her

28

3

own little world." AR 45.  When her children come into her room, she listens for a few seconds and then turns her head because they are invading her privacy.  AR 46.

When questioned by the ALJ, Plaintiff testified that she has a male doctor and that when she goes, she talks to him and says what she has to, but keeps it short.  AR 48.  In addition to Celexa and Xanax, Plaintiff takes Norco for pain and Ambien to help her sleep.  She also takes medication for high blood pressure, Albuterol, iron tablets, something for the arthritis in her knees and nitroglycerin.  AR 48.

For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience.  This person could lift 10 pounds frequently and 20 pounds occasionally, stand and walk up to 6 hours and sit for 6 hours.  This person "needs to avoid temperature extremes, dust, and fumes" and is limited to simple, repetitive tasks with no public contact.  The VE testified that this person cannot perform Plaintiff's past relevant work but could work as a bagger, garment sorter and grader.  AR 49-50.

For the second hypothetical, the ALJ asked the VE to assume a person limited to sedentary work.  This person had to "avoid temperature extremes, concentrated exposure to dust and fumes" and would be limited to simple, repetitive tasks with no public contact.  This person could not perform Plaintiff's past relevant work but could perform the positions of ampoule sealer, loader of semi-conductor dyes and weight tester of paper.  AR 51-52.

For the third hypothetical, the ALJ asked the VE to assume the person in the second hypothetical, who can concentrate in two hour increments because of chronic fatigue and has a poor ability to relate to co-workers.  The VE testified that this person could not perform any work.  AR 52-53.

For the fourth hypothetical, Plaintiff's attorney asked the VE to assume that this person could lift 10 pounds frequently and 20 pounds occasionally, stand and walk up to 6 hours and sit for 6 hours.  This person "needs to avoid temperature extremes, dust, and fumes" and is limited to simple, repetitive tasks with no public contact.  This person is also moderately limited in the ability to (1) complete a normal workday and work weeks without interruption from psychologically based symptoms; (2) perform at a consistent pace without an unreasonable

4

number of rest periods; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and (6) maintain socially appropriate behavior and adhere to a standard of neatness.  The attorney defined "moderate" as being unable to perform the tasks two-thirds of the time.  The VE testified that this person could not work.  AR 53.

If "moderate" was defined as unable to perform the task 50 percent of the time, there would still be no work available.  AR 54.

For the fifth hypothetical, Plaintiff's attorney asked the VE to assume that this person could lift 10 pounds frequently and 20 pounds occasionally, stand and walk up to 6 hours and sit for 6 hours.  This person "needs to avoid temperature extremes, dust, and fumes" and is limited to simple, repetitive tasks with no public contact.  This person is also mild to moderately limited in the ability to (1) complete a normal workday and work weeks without interruption from psychologically based symptoms; (2) perform at a consistent pace; (3) interact with co-workers; and (4) withstand the stress of a routine workday; and (5) deal with various changes.  The VE testified that this person could not perform any work.  AR 54-55.

For the sixth hypothetical, Plaintiff's attorney asked the VE to assume that this person could lift 10 pounds frequently and 20 pounds occasionally, stand and walk up to 6 hours and sit for 6 hours.  This person "needs to avoid temperature extremes, dust, and fumes" and is limited to simple, repetitive tasks with no public contact.  This person also has moderate difficulty maintaining social functioning and moderate difficulty maintaining concentration, persistence or pace.  The VE testified that this person could not work.  AR 55.

Medical Evidence

In 2005, Plaintiff was seen at Visalia Health Center for complaints of back and shoulder pain and anxiety.  She was diagnosed with persistent left upper back pain and given Vicodin and Xanax.  Plaintiff was also using an inhaler for shortness of breath.  AR 195-196.

On June 22, 2006, Plaintiff was seen in the emergency room for left-sided chest pain.  A chest x-ray was normal.  AR 345-355.

1    On September 28, 2006, Plaintiff was brought to Kaweah Delta Hospital by law

2 enforcement for a jail clearance examination.  AR 424.  Her physical examination was essentially

3 normal, though she was "rude and uncooperative."  AR 425.

4    Plaintiff underwent a hysterectomy on October 30, 2006.  AR 435.

5    Plaintiff saw her treating physician, Henry Ow-Yong, M.D., on December 15, 2006, and

6 requested pain medication for pain in her legs and knees.  She exhibited bizarre behavior and was

7 talking nonsense.  Plaintiff was smoking about a pack per day and reported that only Soma and

8 Vicodin helped her pain.  He diagnosed chronic Hepatitis C, chronic obstructive lung disease and

9 unspecified arthritis.  Dr. Ow-Yong referred Plaintiff to infectious disease for Hepatitis C

10 treatment and advised her to smoke less.  He prescribed Ultram and Flexeril.  AR 558.

11    Plaintiff returned to Dr. Ow-Yong on January 9, 2007, for complaints of pain in her left

12 hand and lower back.  Plaintiff also requested medication for anxiety, though she had not been

13 seen by Mental Health yet.  She specifically requested Xanax, Soma and Vicodin.  Plaintiff had

14 no edema, cyanosis or clubbing in her extremities.  Her left wrist was tender to palpation but had

15 a strong a radial pulse.  Dr. Ow-Yong diagnosed chronic back pain, carpal tunnel syndrome on

16 the left, anxiety and depression.  He gave her a splint for her wrist and advised her to go to

17 Mental Health and request Xanax.  Dr. Ow-Yong prescribed Vicodin but would not give her

18 Soma.  AR 556-557.

19    On January 16, 2007, Plaintiff was taken to the emergency room with complaints of

20 headache, vomiting, dizziness and low back pain.  Plaintiff's physical examination was normal

21 and she was discharged with diagnoses of headache and borderline diastolic hypertension.

22 Plaintiff received Vicodin for pain and was told to follow-up with her treating physician.  AR

23 506-512

24    On January 29, 2007, Plaintiff Dr. Ow-Yong for complaints of back and chest pain.  She

25 also reported a history of asthma, depression and anxiety.  On examination, Plaintiff had some

26 coarse breath sounds, but no wheezes, rales or rhonchi.  She was not in respiratory distress and

27 was very talkative without difficulties.  Dr. Ow-Yong diagnosed cough, asthma, chest pain,

28 chronic Hepatitis C and low back pain.  He advised Plaintiff to seek mental health treatment for

depression and anxiety, but she indicated that she did not want to.  Dr. Ow-Yong refilled her
Albuterol and ordered lab work.  AR 554-555.  A chest x-ray dated January 29, 2007, was
normal.  AR 201.

On March 25, 2007, Plaintiff was again seen in the emergency room for abdominal and
back pain for the past week.  Plaintiff reported that she drinks alcohol everyday and smokes one
pack of cigarettes per day.  Her physical examination was normal, though laboratory tests showed
an elevated ammonia level.  She was discharged in improved condition.  AR 689-693.

On April 21, 2007, Plaintiff saw Adi Klein, M.D., for a consultive examination.  Dr.
Klein noted that Plaintiff does not smoke or drink and appeared mildly fatigued and lethargic.
Plaintiff was alert and oriented to person, place and time.  She had a mild goiter and good air
movement in her lungs, with no rhonchi or rales.  Plaintiff had mild right upper quadrant
abdominal tenderness.  There was no tenderness in her back and range of motion was within
normal limits.  Range of motion in all other extremities was normal.  Plaintiff had good tone
bilaterally with good, active motion.  Strength was 5 out of 5 throughout and there was no
atrophy.  There was a mild slow reflex in the biceps.  AR 564-567.

Dr. Klein diagnosed probable hypothyroidism and liver problems with no objective
evidence to establish a diagnosis.  Due to her hypothyroidism, Dr. Klein believed she could lift
and carry 20 pounds occasionally and 10 pounds frequently.  She could stand and walk for 6
hours and could sit for 6 hours.  Plaintiff also had a limitation of "no dust and fumes."  AR 567-
568.

Greg Hirokawa, Ph.D., performed a psychiatric evaluation on May 11, 2007.  Plaintiff
was cooperative throughout the interview but her participation was fair.  She reported feeling
depressed, hearing voices, having trouble sleeping, difficulty being around other people and
seeing shadows.   Plaintiff explained that she has not had mental health treatment though she is
prescribed psychotropic medication by her primary care physician.  She reported a history of
alcohol usage and denied prior suicide attempts.  She told Dr. Hirokawa that she last used drugs
and drank heavily 6 months ago.  Plaintiff also reported that she last worked in 2001 and was
"currently actively seeking employment."  On mental status examination, Plaintiff appeared

depressed and her affect was restricted.  Plaintiff's intellectual functioning appeared to be in the average range.  Recent memory was intact though remote memory was selectively impaired due to her inability to recall certain events in her life with adequate details.  Plaintiff could perform a simple three step command but could not spell the word "world" backwards.  Concentration for conversation was adequate.    AR 569-572.

Dr. Hirokawa diagnosed depressive disorder, not otherwise specified, rule out substance-induced psychosis, cocaine abuse in reported remission, and personality disorder not otherwise specified.  Her symptoms of depression were in the mild range and the likelihood of her mental condition improving within the next 12 months was fair.  Plaintiff had a negative work history consisting of minimal work experience.  Plaintiff also appeared to have a personality disorder consisting of poor interpersonal skills and anger problems.  Her symptoms of depression were primarily due to her physical problems and the associated limitations.

Dr. Hirokawa opined that Plaintiff was mildly limited in (1) her ability to remember work-like procedures; (2) her ability to remember, understand and carry out very short and simple instructions; (3) her ability to understand and remember detailed instructions; (4) her ability to maintain attention and concentration for extended periods of time; (5) social judgment and awareness of socially appropriate behavior; (6) her ability to perform activities within a schedule, maintain regular attendance and be punctual; and (7) her ability to function independently and sustain an ordinary routine without special supervision.  Plaintiff was "mild to moderately limited" in her ability to (1) accept instructions from a supervisor and respond appropriately to criticism; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace; (3) interact with coworkers and (4) withstand the stress of a routine workday and deal with changes in the work setting.  AR 573.

A liver biopsy performed on May 21, 2007, revealed chronic Hepatitis C Grade I, with no significant fibrosis.  AR 626.  Prior to the biopsy, Plaintiff met with a social worker for emotional support.  She was stressed about the procedure and reported a history of depression, difficulty sleeping and audio and visual hallucinations.  She also explained that she was not used

to being around people.  Plaintiff agreed to follow up with Mental Health for treatment after the procedure.  AR 680.

On May 30, 2007, State Agency physician I. Ocrant, M.D., completed a Physical Residual Capacity Assessment.  Dr. Ocrant opined that Plaintiff could lift 50 pounds occasionally, 25 pounds occasionally, stand and/or walk for 6 hours and sit for 6 hours.  She had no further limitations.  AR 574-578.

A chest x-ray taken on June 6, 2007, was negative.  AR 622.

On June 12, 2007, State Agency physician D.V. Lucila, M.D., completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment.  Dr. Lucila opined that Plaintiff was moderately limited in her ability to (1) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace; (2) interact appropriately with the general public; (3) accept instructions and respond appropriately to criticism; (4) get along with coworkers; and (5) maintain socially appropriate behavior.  AR 582-595.  This opinion was affirmed on September 4, 2007.  AR 596.

Plaintiff was admitted to the hospital on September 25, 2007, for complaints of chest pain.  AR 648-650.  She reported that she had started interferon injections and felt much worse after the third injection.  Plaintiff denied drug or alcohol use but admitted to smoking tobacco. On examination, Plaintiff had poor inspiratory aspirate due to dyspnea and pleuritic chest pain. She was also tender in the sternal and upper chest wall bilaterally.  She was diagnosed with atypical chest pain and admitted for observation.  A CT scan of Plaintiff's chest taken on September 25, 2007, was negative.  AR 625.  A chest x-ray taken the same day showed shallow inspiration, with clear lungs and no evidence of pneumonia or pleural effusion.  AR 661. Plaintiff was discharged the following day, September 26, 2007, with no restrictions on activity. AR 652.

Blood tests dated October 3, 2007, and December 5, 2007, showed normal liver function. AR 602-604, 744.

1   On January 4, 2008, Plaintiff returned to Dr. Ow-Yong and reported feeling depressed.

2   Her physical examination was normal and Dr. Ow-Yong diagnosed mild major depressive

3   disorder, recurrent.  Plaintiff was prescribed Lexapro.  AR 743.

4   Plaintiff saw Dr. Ow-Yong on February 5, 2008, in follow up.  Her Lexapro was changed

5   to Zoloft. AR 739-740.

6   Plaintiff continued to see Dr. Ow-Yong monthly through January 2009, with diagnoses of

7   depression, anxiety, asthma, hypertension, hypothyroidism, arthralgias and fibromyalgia.  Her

8   physical examinations were essentially normal.  AR 705, 708, 711, 713, 717, 719, 724, 728, 730,

9   735, 738.

10   ALJ's Findings

11   The ALJ determined that Plaintiff had the severe impairments of chronic Hepatitis C,

12   asthma, chronic low back pain of undetermined etiology and depression.  AR 12.  Despite these

13   impairments, Plaintiff retained the residual functional capacity ("RFC") to lift and carry 20

14   pounds frequently, 10 pounds occasionally, stand and/or walk a total of 6 hours and sit for 6

15   hours.  Plaintiff had to avoid dust, fumes and temperature extremes.  She could perform simple,

16   repetitive tasks.  AR 13.  With this RFC, the ALJ determined that Plaintiff could not perform her

17   past work but could perform a significant number of jobs in the national economy.  AR 19.

18   **SCOPE OF REVIEW**

19   Congress has provided a limited scope of judicial review of the Commissioner's decision

20   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

21   the Court must determine whether the decision of the Commissioner is supported by substantial

22   evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

23   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

24   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

25   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

26   401.  The record as a whole must be considered, weighing both the evidence that supports and

27   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

28   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

1    apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

2    This Court must uphold the Commissioner's determination that the claimant is not disabled if the

3    Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

4    substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

5    Cir. 1987).

6                                        **REVIEW**

7            In order to qualify for benefits, a claimant must establish that he is unable to engage in

8    substantial gainful activity due to a medically determinable physical or mental impairment which

9    has lasted or can be expected to last for a continuous period of not less than 12 months.  42

10   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

11   such severity that he is not only unable to do her previous work, but cannot, considering his age,

12   education, and work experience, engage in any other kind of substantial gainful work which

13   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

14   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

15   Cir. 1990).

16          In an effort to achieve uniformity of decisions, the Commissioner has promulgated

17   regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

18   C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

19   found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

20   her disability; (2) has an impairment or a combination of impairments that is considered "severe"

21   (of chronic Hepatitis C, asthma, chronic low back pain of undetermined etiology and depression)

22   based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

23   impairment or combination of impairments which meets or equals one of the impairments set

24   forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past relevant work;

25   but (5) retains the RFC to perform a significant number of jobs in the national economy.  AR 13-

26   19

27          Here, Plaintiff argues that the ALJ (1) failed to properly consider the opinion of Dr.

28   Klein; and (2) improperly rejected the opinion of Dr. Hirokawa.

**DISCUSSION**

Plaintiff argues that the ALJ improperly considered the opinions of Dr. Klein and Dr. Hirokawa, both examining physicians.

A.   Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor.  *E.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th

Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For

example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating

physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the

opinions of Magallanes's treating physicians...."  *Magallanes*, 881 F.2d at 752 (emphasis in

original). Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ

also relied on laboratory test results, on contrary reports from examining physicians, and on

testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

B.    Dr. Klein

Plaintiff contends that the ALJ failed to understand Dr. Klein's limitation to "no dust and

fumes."  AR 567.  Specifically, she argues that in contrast to a complete restriction, the ALJ

asked the VE to assume a person who had to avoid concentrated exposure to dust or fumes.  AR

51-52.

The Court agrees with Plaintiff that there is a vocational difference between an absolute

bar and a requirement to avoid only concentrated exposure.  See 85-15.  Her argument, however,

is based on the language used second hypothetical.  The first hypothetical, which the ALJ

ultimately adopted, described a person who needed to "avoid temperature extremes, dust, and

fumes."  AR 49-50.  Indeed, the RFC states that Plaintiff "must avoid dust, fumes and

temperature extremes."  AR 13.  Therefore, both the adopted hypothetical and the RFC reflect a

complete restriction from dust and fumes.

C.    Dr. Hirokawa

Finally, Plaintiff contends that the ALJ provided legally insufficient reasons for rejecting

Dr. Hirokawa's opinion.

Contrary to Plaintiff's suggestion, the ALJ did not reject *all* of Dr. Hirokawa's opinion.

Dr. Hirokawa determined that Plaintiff could perform simple, repetitive tasks and this was

reflected in the RFC.  AR 13, 16.  *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989)

(ALJ need not accept all, some or none of a physician's opinion).  The ALJ also stated that he

agreed with Dr. Hirokawa's GAF score of 62, indicating "mild symptoms or generally

functioning pretty well."  AR 16.

1    The ALJ did reject Dr. Hirokawa's opinion that Plaintiff was "mild to moderately"

2    limited in her ability to (1) accept instructions from a supervisor and respond appropriately to

3    criticism; (2) complete a normal workday and workweek without interruptions from

4    psychologically based symptoms and to perform at a consistent pace; (3) interact with coworkers

5    and (4) withstand the stress of a routine workday and deal with changes in the work setting.  AR

6    16.

7    In rejecting these limitations, the ALJ first explained that the "mild to moderate"

8    description was "too vague to be useful" in evaluating Plaintiff's RFC.  AR 16.  The definition

9    suggests that her limitations lie somewhere in between the two common measuring points.  As

10   there may be a different result based on whether a claimant's limitations are mild or moderate, a

11   nonspecific definition is indeed vague.

12   In any event, the State Agency physician characterized similar abilities as moderate and

13   the ALJ properly rejected the limitations because they were not based on any medical treatment

14   and were inconsistent with Dr. Hirokawa's findings.  AR 16.  Although the record includes

15   numerous complaints of depression and anxiety, as well as prescriptions for anti-depressants

16   from her primary care physician, the only mental status examination was relatively benign.

17   Plaintiff appeared depressed, but her intellectual functioning was in the average range and her

18   recent memory was intact.  Her GAF score was 62, which indicates some mild symptoms but a

19   general ability to function well.  Plaintiff could perform a simple three step command and her

20   concentration for conversation was adequate.  Dr. Hirokawa also noted that Plaintiff's remote

21   memory was selectively impaired and that she could not spell the word "world" backwards, but

22   these findings do not necessarily translate into the moderate limitations found by either Dr.

23   Hirokawa or the State Agency physician.  AR 569-572.  A lack of supporting clinical findings is

24   a valid reason for rejecting a medical opinion.  *Magallanes,* 881 F.2d at 751.

25   The ALJ also questioned Dr. Hirokawa's suggestion of moderate limitations because

26   Plaintiff had not had any mental health treatment.  AR 16.  It appears that the ALJ characterizes

27   "mental health treatment" as that rendered by a mental health professional, and it is true that she

28   did not receive any treatment from a mental health professional.  If the ALJ was suggesting that

14

1   Plaintiff did not receive any mental health treatment from *any* source, he was incorrect.  As

2   explained above, Plaintiff received anti-depressant medication from her treating physician.

3   Nonetheless, her treatment from Dr. Ow-Yong does not alter the fact that there was no objective

4   evidence in the record to support moderate limitations.

5        Plaintiff suggests that the ALJ improperly relied on the lack of mental health treatment in

6   questioning the medical opinions.  In support of her argument, she cites *Nguyen v. Chater*, where

7   the Ninth Circuit questioned the practice of discrediting a claimant with a mental impairment

8   based on the failure to seek treatment.  The court noted that the symptoms of depression are often

9   not recognized, making "the fact that claimant may be one of millions of people who did not seek

10  treatment for a mental disorder until late in the day" an improper basis for rejecting an examining

11  physician's opinion.  *Nguyen v. Chater,* 100 F.3d 1462, 1065 (9th Cir. 1996).  In so holding, the

12  court cited the Sixth Circuit's decision in *Blankenship v. Bowen,* where the court invalidated an

13  ALJ's reasons for rejecting a claimant's assertions about his depression.  "'[A]ppellant may have

14  failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to

15  chastise one with a mental impairment for the exercise of poor judgment in seeking

16  rehabilitation.'"  *Id.* (citing *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).

17       Plaintiff's treatment history, however, is not comparable to the claimant in *Nguyen,* who

18  neither sought nor received *any* mental health treatment prior to a consultive examination.  The

19  facts of this action show that Plaintiff did in fact receive treatment from her primary care

20  physician but ignored his repeated advice to seek specific mental health treatment.

21       To the extent Plaintiff suggests that the ALJ should have recontacted Dr. Hirokawa to

22  clarify his "vague" opinions, she is incorrect.  Plaintiff cites 20 C.F.R. § 416.919p(b), which

23  states that the Administration will recontact the consultive examiner where the report is

24  "inadequate or incomplete."  This is consistent with the general rule that an ALJ needs to further

25  develop the record only where the evidence is ambiguous or inadequate.  *Tonapetyan v. Halter,*

26  242 F.3d 1144, 1150 (9th Cir.2001).  Here, although the ALJ characterized the use of "mild to

27  moderate" as vague, she had sufficient evidence to reject even moderate limitations.  Given Dr.

28

Hirokawa's mental status findings, the ALJ's determination was supported by substantial evidence.

The ALJ's treatment of the medical evidence is supported by substantial evidence and is free of legal error.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Doria M. King.

IT IS SO ORDERED.

**Dated:**   **December 16, 2010**            **/s/ Dennis L. Beck**
                                    UNITED STATES MAGISTRATE JUDGE

16